IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| John Alexander and Amanda Alexander, Individually and as Parents and Guardian Ad Litem for J.A., a Minor Under the Age Of Fourteen (14) Years | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 2:14-cv-02408 |
| vs. | ) ) ) | **ORDER** |
| South Carolina Department of Social Services, | ) ) ) ) | |
| Defendant. | ) ) | |

This matter comes before the court on John and Amanda Alexander's (together, the "Alexanders") motion summary judgment, ECF No. 33. For the reasons set forth below, the court dismisses the Alexanders' federal claims. Finding no subject-matter jurisdiction over the remaining state-law claims, the court remands the case to state court.

## I. BACKGROUND

This litigation arises from the removal of the Alexanders' minor child, J.A., from their home by the South Carolina Department of Social Services ("SCDSS"). J.A. was born on January 22, 2008, and the Alexanders separated in February of 2012. ECF No. 33 at 2. After their separation, Mr. Alexander was stationed as a military police officer in Georgia while Mrs. Alexander lived with J.A. in Ladson, South Carolina. Id. In May of 2012, when J.A. was four years old, she began attending Life Christian Development Center ("Life Christian"). Id. On April 15, 2013, Dawn Simmons, an employee of Life

1

Christian, called SCDSS and reported that J.A. had been exhibiting behaviors consistent with sexual abuse. Id.

SCDSS Case Manager Diane Langston ("Langston") was assigned the case that same day. Id. at 3. Langston observed J.A. at Life Christian, and then visited Mrs. Alexander's home on April 16, 2013. Id. Mr. Alexander was in town at the time and was at home with J.A. when Langston arrived. Id. Langston explained the allegations of sexual abuse to Mr. Alexander and had him sign a Safety Plan, which provides that J.A. must: (1) have a Forensic Interview with Dorchester Children's Center; (2) have no unsupervised contact with her grandfather, the suspected abuser, or any other male besides her father; and (3) be supervised by her parents or grandmother. Id. at 4. On April 18, 2013, the Alexanders and J.A.'s grandmother met with Mrs. Langston at SCDSS. Id. The Alexanders claim that Langston assured them during this meeting that there was no reason to expect that J.A. would be removed from their home. Id.

On April 19, 2013, SCDSS employee Elizabeth Snider ("Snider") visited the Alexanders' home, which Snider claims was in response to a concerned call from Life Christian that J.A. had not come in that day. Id. 4–5. On the way to the Alexanders' home, Snider contacted the Berkeley County Sheriff's Department to have them meet her at the Alexanders' home in order to determine whether to take J.A. into emergency protective custody ("EPC"). Id. at 5. Officer Stephen Tillman ("Officer Tillman") met Snider at the scene and eventually removed J.A. from the home. Id. On April 23, 2013, a probable cause hearing was held in state court, at which the Alexanders agreed to a finding that probable cause existed at the time of removal, but that probable cause no

longer existed for SCDSS to keep J.A.  ECF No. 39-10.  Legal and physical custody of J.A. was then returned to the Alexanders, and the case was dismissed by a Consent Order.

The Alexanders filed the instant action in the Berkeley County Court of Common Pleas on May 12, 2014, alleging that SCDSS was negligent, grossly negligent, and reckless in: (1) failing to properly investigate claims and follow protocol; (2) failing to properly hire and train personnel; (3) taking J.A. from the Alexanders and placing her in DSS custody without properly investigating the claims against them; (4) failing to return J.A. to the Alexanders' home; (5) abusing their power by taking J.A. out of the Alexanders' home with a reckless attitude towards the Alexanders' Constitutional rights; and (6) in depriving the Alexanders of their Constitutional right to Due Process and the protection of the Fourth and Fourteenth Amendments.  ECF No. 1-1.  The case was removed to this court on June 17, 2014.  ECF No. 1.  On August 22, 2017, SCDSS filed their motion for summary judgment.  ECF No. 33.  On September 22, 2017, the Alexanders filed their reply.  The matters have been fully briefed and are now ripe for the court's review.

## II.  STANDARD

### A.  Dismissal of a Claim for Lack of Subject-Matter Jurisdiction

A party challenging the court's subject-matter jurisdiction over a pending action may bring a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).  Even when a party does not move to dismiss on this ground, the court has the right and obligation to ensure that it possesses subject-matter jurisdiction over every case that comes before it.  Gonzalez v. Thaler, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that

the parties have disclaimed or have not presented."). When a federal court does not possess subject-matter jurisdiction over a claim, it must sua sponte dismiss the claim. Id.

### B. Supplemental Jurisdiction

A federal district court "has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349 (1988) (quoting Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). When evaluating whether to exercise jurisdiction over pendent state-law claims, a district court should consider the values of "judicial economy, convenience, fairness, and comity." Id. at 350. "Because in some circumstances a remand of a removed case involving pendent claims will better accommodate these values than will dismissal of the case, the animating principle behind the pendent jurisdiction doctrine supports giving a district court discretion to remand when the exercise of pendent jurisdiction is inappropriate." Id. at 351; see also Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). A district court may decline to exercise supplemental jurisdiction over pendent state claims if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) <u>the district court has dismissed all claims over which it has original jurisdiction</u>, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367 (emphasis added).

C. **Remand**

In deciding whether to remand, the federal court should construe removal jurisdiction strictly in favor of state court jurisdiction. Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004). "If federal jurisdiction is doubtful, a remand is necessary." Mulcahy, 29 F.3d at 151 (citations omitted), Pohto v. Allstate Ins. Co., No. 10-2654, 2011 WL 2670000, at *1 (D.S.C. July 7, 2011) ("Because federal courts are forums of limited jurisdiction, any doubt as to whether a case belongs in federal or state court should be resolved in favor of state court.").

## III. DISCUSSION

In summary, the Alexanders allege that SCDSS: (1) violated their constitutional rights to due process; and (2) was negligent, grossly negligent, and reckless in its handling of the removal of J.A. from her home. SCDSS argues that the court could grant summary judgment because it did not violate the Alexanders' due process rights, and that collateral estoppel and the South Carolina Tort Claims Act bar the remaining claims. For the reasons discussed below, the court dismisses the constitutional claims and remands the case to state court to deal with the remaining state-law claims.

A. **Constitutional Due Process Claims**

SCDSS argues that the Alexanders' constitutional claims fail, because the Alexanders were represented by counsel and had notice and the opportunity to be heard at the probable cause hearing. ECF No. 33 at 17. Furthermore, the Alexanders agreed that removal was proper at the probable cause hearing. Id. The Alexanders contend SCDSS deprived them of their protected interest in having custody of their child without due

process of law when Snider initiated the emergency protective custody process without sufficient evidence of abuse. ECF No. 39 at 4.

The court follows the lead of Booker v. S.C. Dep't of Soc. Servs., 2013 WL 4500045 (D.S.C. Aug. 20, 2013), aff'd, 583 F. App'x 147 (4th Cir. 2014), in approaching these claims. In Booker, the court interpreted the vague allegations of constitutional violations by state actors "in light of the only statute to allow such claims—42 U.S.C. § 1983." Id. at *3. It then dismissed the constitutional claims against SCDSS because § 1983 only authorizes claims against "persons" acting under color of state law, and states and their entities do not qualify as "persons." Id.; see Will v. Michigan Dep't of State Police, 491 U.S. 58, 65–66 (1989) (concluding that a State is not a "person" under § 1983).

Here, the Alexanders have alleged that SCDSS deprived them of their constitutional right to due process. The court interprets this as a 42 U.S.C. §1983 claim like in Booker. The Alexanders list only SCDSS as a defendant—not Snider or any other individual SCDSS employee. The constitutional claims against SCDSS as an entity are therefore dismissed, because SCDSS is not a "person" under the meaning of § 1983. During the hearing on this matter, the court asked the parties to submit supplemental briefings on this issue. In their supplemental briefings, the parties agreed with the court's interpretation. ECF Nos. 47 and 48. Thus, the court dismisses the Alexanders' claims of constitutional due process violations.

### B. Remand to State Court

This case was originally before this court on federal question jurisdiction due to the constitutional claims, with the court exercising supplemental jurisdiction over the

related state-law claims. The only basis of federal jurisdiction for these pendent state law claims is under 28 U.S.C. § 1367(a), which states that if a district court possesses original jurisdiction in a civil proceeding, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Section 1367(c)(3) goes on to state that the district court may decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." The Supreme Court has ruled that supplemental jurisdiction is a "doctrine of discretion, not of plaintiff's right, and hence the power need not be exercised in every case in which it is found to exist." Gibbs, 383 U.S. at 726. The Court then held that "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Id.

The court has dismissed the only federal claims in issue and declines to exercise supplemental jurisdiction over the remaining state-law claims. There is no independent basis of federal jurisdiction here—the only claims remaining in the case are state-law claims, and there is no diversity of citizenship between the parties that would give the court has diversity jurisdiction. Thus, the court remands this action to state court.

## IV.  CONCLUSION

For the reasons set forth above, the **DISMISSES** the federal claims and **REMANDS** the remaining claims to state court.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 25, 2018**
**Charleston, South Carolina**